# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| UNILOC 2017 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG ELECTRONICS CO., LTD.,<br><br>*Defendants.* | Civil Action No. 2:19-cv-259-JRG-RSP |

**DEFENDANTS SAMSUNG ELECTRONICS AMERICA, INC.'S AND
SAMSUNG ELECTRONICS CO., LTD.'S MOTION TO DISMISS
FOR PATENT-INELIGIBILITY UNDER 35 U.S.C. § 101 AND BECAUSE
THIS SUIT IS PRECLUDED BY COLLATERAL ESTOPPEL AND CLAIM-SPLITTING**

# <u>TABLE OF CONTENTS</u>

I.    Introduction ............................................................................................................. 1

II.   Statement of Issues to Be Decided by the Court .................................................... 3

III.  Background ............................................................................................................. 3

     A.   Procedural History and Related Cases ........................................................ 3

     B.   The '891 Patent and Its Purported Invention ............................................. 4

IV.  Legal Standard ...................................................................................................... 7

V.   Argument ............................................................................................................... 7

     A.   The '891 Patent is Directed to Patent-Ineligible Subject Matter in Violation of § 101 ..................................................................................... 7

          1.   For Purposes of This § 101 Analysis, Claim 1 Is Representative ....................... 8

          2.   *Alice* Step One: The '891 Patent Is Directed to the Abstract Idea of Adding an Additional Data Field to an Otherwise Conventional Message in a Wireless Communication System ................................................. 11

              a.   Similar cases show that the '891 Patent claims an abstract idea ............... 13

              b.   The LG Decision is analogous and highly persuasive ............................... 16

          3.   *Alice* Step Two: Representative Claim 1 Does Not Contain an Inventive Concept to Transform its Abstract Idea into Patent-Eligible Subject Matter .... 20

VI.  Preclusion Doctrines Warrant Dismissal of the Present Suit ................................. 23

     A.   Uniloc Is Collaterally Estopped from Asserting the '891 Patent ................ 23

          1.   There Is Identity of Issues Between This Case and the LG Decision ............... 25

          2.   The Remaining Collateral Estoppel Elements Are Satisfied ........................... 27

     B.   The Rule Against Claim-Splitting Precludes This Case ............................ 27

VII. Conclusion .......................................................................................................... 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                          **Page(s)**

*3G Licensing S.A. v. Blackberry Ltd.*.
   302 F. Supp. 3d 640 (D. Del. 2018)......................................................................................14

*Acumed LLC v. Stryker Corp.*,
   525 F.3d 1319 (Fed. Cir. 2008)........................................................................................28

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014).............................................................................. *passim*

*Ameritox, Ltd. v. Aegis Scis. Corp.*,
   No. 3:08-cv-1168, 2009 U.S. Dist. LEXIS 13305 (N.D. Tex. Feb. 9, 2009)....................27, 28

*Ayati-Ghaffari v. JP Morgan Chase Bank*,
   No. 4:18-CV-483-ALM-CAN, 2019 WL 1550141 (E.D. Tex. Feb. 10, 2019)........................4

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)...............................................................20, 21, 22

*Bustos v. Martini Club, Inc.*,
   599 F.3d 458 (5th Cir. 2010) ...............................................................................7

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019)............................................................................13

*Chrimar Sys. Inc. v. Alcatel-Lucent, Inc.*,
   No. 6:15-cv-163-JRG-JDL, 2015 WL 12941897 (E.D. Tex. May 19, 2015)........................27

*Cisco Sys. v. Uniloc USA, Inc.*,
   386 F. Supp. 3d. 1185 (N.D. Cal. 2019) ................................................................21

*Clifton v. Warnaco, Inc.*,
   53 F.3d 1280, 1995 WL 295863 (5th Cir. 1995) ...................................................24

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014)........................................................................8, 22

*Elec. Power Grp. v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)...........................................................................23

*Fed. Deposit Insur. Corp. v. Nelson*,
   19 F.3d 15 (5th Cir. 1994) ...............................................................................27, 28

*Funk v. Stryker Corp.*,
   631 F.3d 777 (5th Cir. 2011) ...........................................................................7, 17

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)..............................................................................................12

*Hay & Forage Indus. v. New Holland N. Am., Inc.*,
    25 F.Supp.2d 1170 (D. Kan. 1998)....................................................................17

*Houston Prof'l Towing Assoc. v. City of Houston*,
    812 F.3d 443 (5th Cir. 2016) ..............................................................................28

*In re TLI Communications*,
    823 F.3d 607 (Fed. Cir. 2016)......................................................................15, 16

*Integrated Tech. Sys., Inc. v. First Internet Bank of Indiana*,
    No. 216-cv-00417-JRG-RSP, 2017 WL 631195 (E.D. Tex. Jan. 30, 2017)..................2, 18, 25

*Miss. Chem. Corp. v. Swift Agric. Chems. Corp.*,
    717 F.2d 1374 (Fed. Cir. 1983)..........................................................................27

*Norris v. Hearst Trust*,
    500 F.3d 454 (5th Cir. 2007) ..............................................................................17

*Nystrom v. Trex Co., Inc.*
    580 F.3d 1281 (Fed. Cir. 2009)..........................................................................29

*O'Reilly v. Morse*,
    56 U.S. 62 (1853)................................................................................................13

*Ohio Willow Wood Co. v. Alps South, LLC*,
    735 F.3d 1333 (Fed. Cir. 2013)..........................................................24, 25, 26, 27

*Personalized Media Comm. v. Apple, Inc.*,
    No. 2:15-cv-1366-JRG-RSP, 2016 WL 5719701 (E.D. Tex. Sept. 13, 2016).......................26

*PPS Data, LLC v. Jack Henry & Assocs.*,
    No. 2:18-CV-007-JRG, 2019 U.S. Dist. LEXIS 169218 (E.D. Tex. Sept. 6, 2019) ..........8, 10

*Senju Pharm. Co. v. Apotex Inc.*,
    746 F.3d 1344 (Fed. Cir. 2014)..........................................................................28

*SimpleAir v. Google*,
    884 F.3d 1160 (Fed. Cir. 2018)......................................................................18, 25

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
    873 F.3d 1364 (Fed. Cir. 2017)............................................................................8

*Soverain Software v. Victoria's Secret Direct Brand Mgmt.*,
    778 F.3d 1311 (Fed. Cir. 2015)......................................................................23, 24

*St. John's Univ. v. Bolton*,
    757 F.Supp.2d 144 (E.D.N.Y. 2010) ...................................................................17

*T-Rex Prop. AB v. Regal Ent'mt Grp.*,
    No. 6:16-cv-927-JDK-KNM, 2019 WL 4727426 (E.D. Tex. Sep. 27, 2019) .........................11

*Tellabs, Inc. v. Makor Issues Rights, Ltd.*,
    551 U.S. 308 (2007)......................................................................................24

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) ...........................................................................24

*Thomas & Betts Corp. v. Panduit Corp.*,
    65 F.3d 654 (7th Cir. 1996) ............................................................................17

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)................................................................13, 14, 16

*Ultramercial, Inc. v. Hulu, LLC*,
    722 F.3d 1335 (Fed. Cir. 2013)...........................................................................8

*Uniloc USA, Inc. v. AVG Techs. USA, Inc.*,
    No. 2:16-CV-393-RWS, 2017 U.S. Dist. LEXIS 45125 (E.D. Tex. Mar. 28, 2017) ........13, 23

*Uniloc USA Inc. v. LG Elecs. USA Inc.*,
    379 F. Supp. 3d 974 (N.D. Cal. Apr. 9, 2019) ............................................... *passim*

*Uniloc USA, Inc. v. Med. Info. Tech., Inc.*,
    No. 6:16-cv-463-RWS, 2017 U.S. Dist. LEXIS 192677 (E.D. Tex. Mar. 30, 2017) .............22

*Verde v. Stoneridge, Inc.*,
    137 F. Supp. 3d 963 (E.D. Tex. 2015) .................................................................28

This is the nineteenth patent case that Uniloc has filed against Samsung in this Court.[1] Samsung respects a patent owner's right to enforce and protect its patents.  With this case, however, Uniloc's strategy of filing a multitude of serial lawsuits has gone too far.  The patent-at-issue here claims, in an even broader fashion, the same patent-ineligible concept as that claimed by another patent—one that is already the subject of an invalidity judgment entered by a California district court.  Like the patent held ineligible there, the closely-related patent-at-issue here violates § 101 and is thus invalid.  Appreciating that the only objectively reasonable course is to stay related cases, Uniloc stipulated to a stay of its action against Samsung over the invalidated patent on the heels of the California district court's ruling.  A few months later, Uniloc instituted this action, asserting the closely-related patent-at-issue.  Uniloc's intentional filing of duplicative cases in serial fashion goes against venerable preclusion doctrines and generally frustrates the goals of finality, comity, and sound judicial administration.  These circumstances warrant dismissal of this case as Samsung requests in this Motion.

## I.    INTRODUCTION

Defendants Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. (collectively, "Samsung") move the Court to dismiss the Complaint (Dkt. 1) (Ex. 1)[2] filed by Uniloc 2017 LLC ("Uniloc") under Fed. R. Civ. P. 12(b)(6) based on three grounds: (1) patent-ineligibility under 35 U.S.C. § 101; (2) collateral estoppel; and (3) improper claim-splitting.

---

[1] *E.g.,* No. 2:16-cv-642 (June 14, 2016); No. 2:17-cv-650 (Sep. 15, 2017); No. 2:17-cv-651 (Sep. 15, 2017); No. 2:17-cv-650 (Sep. 15, 2017); No. 2:18-cv-040 (Feb. 23, 2018); No. 2:18-cv-041 (Feb. 23, 2018); No. 2:18-cv-042 (Feb. 23, 2018); No. 2:18-cv-044 (Feb. 23, 2018); No. 2:18-cv-506 (Nov. 17, 2018); No. 2:18-cv-507 (Nov. 17, 2018); No. 2:18-cv-508 (Nov. 17, 2018); No. 2:19-cv-125 (Apr. 16, 2019); No. 2:19-cv-126 (Apr. 16, 2019).

[2] Unless otherwise indicated, all Exhibits are attached to the Declaration of Vivian S. Kuo in Support of Samsung's Motion to Dismiss for Patent-Ineligibility Under 35 U.S.C. § 101 and Because this Suit Is Precluded by Collateral Estoppel and Claim-Splitting.

*First*, the Complaint should be dismissed because the sole asserted patent, U.S. Patent No. 6,664,891 (the "'891 Patent") (Ex. 2), is invalid as patent-ineligible under § 101. The '891 Patent is directed to the abstract idea of ***adding an additional data field to an otherwise conventional message in a wireless communication system***. The '891 Patent fails to claim an inventive concept, claiming instead only generic and conventional components like first and second portable devices in a generic communications system. In fact, Uniloc has already fully litigated and lost on this question in an earlier suit over U.S. Patent No. 6,993,049 (the "'049 Patent") (Ex. 3)—a related and narrower patent that shares a priority claim to one of the same UK patent applications as the '891 Patent. For the same reasons that the narrower '049 Patent has been held to be invalid under § 101, the broader '891 Patent should also be held invalid.

*Second*, collateral estoppel precludes Uniloc from pursuing this case because the earlier suit involving the '049 Patent (held to be patent-ineligible) shares substantial similarities with this case involving the '891 Patent. The '891 Patent claims are broader than the invalidated '049 Patent claims in that while the '891 Patent adds a generic "additional data field," the '049 Patent claims the same "additional data field" that is further narrowly described as "for polling." Given these similarities in the patents, it is unsurprising that Uniloc's allegations in this case, including the accused Samsung products and functionality related to the '891 Patent, largely mirror those made in the earlier case with respect to the '049 Patent. After Uniloc had a full and fair opportunity to litigate whether the '049 Patent is patent-ineligible, a California district court entered judgment holding the '049 Patent invalid under § 101. Accordingly, the California judgment against Uniloc (related to the narrower '049 Patent) has preclusive effect and bars Uniloc's claims here (related to the broader '891 Patent).

*Third*, claim-splitting requires claims arising out of a single wrong be presented in one

action, and Uniloc's strategy of filing serial lawsuits that are substantially the same runs afoul of this rule.  The '891 and '049 Patents present substantially the same issues.  Uniloc should have brought its allegations related to the '891 Patent at the same time it asserted the '049 Patent in a prior lawsuit.  Its failure to do so warrants dismissal of this duplicative action.

Accordingly, Samsung respectfully requests this Court grant Samsung's Motion to Dismiss and enter judgment against Uniloc.

## II.     STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

Whether the claims of the '891 Patent are directed to an abstract idea and fail to recite an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention.

Whether Uniloc is barred by collateral estoppel from re-litigating the question of patent-ineligibility of a patent that is substantially the same as—and actually broader than—a related patent already invalidated under § 101 by way of a final judgment entered by a California district court.

Whether the doctrine against claim-splitting precludes Uniloc from serially attacking Samsung by asserting patent claims that are immaterially different from those at issue in an earlier suit against the same group of products.

## III.    BACKGROUND

### A.    Procedural History and Related Cases

Three cases involving two Uniloc patents are important to this Motion:[3]

(1) ***Samsung I***.  On February 23, 2018, Uniloc sued Samsung in this Court for allegedly infringing the '049 Patent.  *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2:18-cv-040-JRG-

---

[3] Of these three cases, two are cases among the nineteen that Uniloc filed against Samsung.  The remaining case is one of sixteen cases that Uniloc has filed against LG.

RSP (E.D. Tex.).

(2) **LG Case**.   Shortly after filing *Samsung I*, Uniloc sued various LG entities in the

Northern District of Texas for allegedly infringing the '049 Patent; that suit was later transferred

to the Northern District of California.   *Uniloc USA Inc. v. LG Elecs. USA Inc.*, No. 18-cv-06738-

LHK (N.D. Cal.) ("LG Case"); and

On February 6, 2019, LG moved to dismiss the Complaint*,* arguing that the '049 Patent

claimed patent-ineligible subject matter.   *Uniloc USA Inc. v. LG Elecs. USA Inc.*, 379 F. Supp. 3d

974, 982 (N.D. Cal. Apr. 9, 2019) ("*LG Decision*").   On April 9, 2019, the California district court

granted LG's motion and entered a judgment of invalidity under § 101.[4]  *Id.* at 1000; LG Case,

Dkt. 110 (Ex. 4).   Thereafter, on April 11, 2019, this Court stayed *Samsung I* pending the appeal

of the California district court's ruling.   *Samsung I*, Dkt. 85 (Ex. 5).   On April 26, 2019, Uniloc

filed a notice of appeal of the *LG Decision*.  *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, No. 19-1835

(Fed. Cir.).[5]

(3) **Samsung II**.  Fifteen months after filing *Samsung I*, and just a few months after Uniloc

agreed to a stay in *Samsung I*, Uniloc sued Samsung on July 31, 2019 asserting the '891 Patent.

Dkt. 1.

### B.    The '891 Patent and Its Purported Invention

The '891 Patent is entitled "Data Delivery through Portable Devices."  The '891 Patent

relates to the use of wireless networks, such as Bluetooth, to send and receive messages, such as

---

[4] Samsung requests that the Court take judicial notice under Fed. R. Evid. 201 of Judge Koh's opinion, finding the claims of the '049 Patent invalid since it is a matter of public record and its contents are not subject to debate.  *See Ayati-Ghaffari v. JP Morgan Chase Bank*, N.A., No. 4:18-CV-483-ALM-CAN, 2019 WL 1550141, at *4 (E.D. Tex. Feb. 10, 2019) ("In determining a motion to dismiss, it is appropriate and the Court may take judicial notice of related pleadings and orders in prior actions.").

[5] Uniloc's reply brief is due October 24, 2019, after which briefing in this appeal will be complete.

inquiry messages, between devices.   '891 Patent, Abstract, 3:4-13.   The patent application underlying the '891 Patent was filed on June 11, 2001, and one of its inventors is Robert J. Davies. The '891 Patent claims priority to two UK patent applications filed on June 26, 2000 and on August 15, 2000.

The '891 Patent discusses "'Context-Aware' (CA)" devices that send and receive information from "low power, short range base stations," such as an "active advertisement source," to provide "information on nearby shops and restaurants and so on." *Id.*, 1:17-33.  It recognizes that prior art technologies already allow for "a genuine broadcast mode that does not require the mobile terminal to join a wireless network," *id.*, 1:42-44, and identifies the "current Bluetooth connection protocol" or the "full current Bluetooth handshaking process" as existing technology for mobile communication devices.  *Id.*, 2:13-42.

As the patent specification explains, in existing Bluetooth systems, a "portable device has conventionally been required to join—as a slave—the piconet administered by the beacon as piconet master." *Id.*, 8:50-53.  "When a Bluetooth unit wants to discover other Bluetooth devices, it enters a so-called inquiry substate." *Id.*, 9:6-8.  In this inquiry substate, the device broadcasts "inquiry messages" with "predetermined data fields" at periodic intervals.  '891 Patent, 9:3-20. This "conventionally" used inquiry procedure "allows a would-be slave to find a base station and issue a request to join the piconet." *Id.*, 8:53-55.  When the Bluetooth unit "enters a so-called inquiry substate" to discover other Bluetooth devices, the unit will issue an "inquiry message containing a [GIAC] or [DIAC]." *Id.*, 9:4-10.  Additionally, the "message transmission is repeated at several levels," including on different frequencies and in different timeslots. *Id.*, 9:10-20.  Thus, as the '891 Patent concedes, broadcasting inquiry messages to be received and read by portable devices was already a well-known function carried out by generic portable computing devices

implementing, for example, the Bluetooth protocol.

The alleged invention proposes to "piggy-back a broadcast channel on the inquiry messages," '891 Patent, 8:65-66, by which the first portable device adds "an additional data field" to the predetermined data fields of the inquiry message. *Id.*, 2:47-60, 8:66-9:3.   While Bluetooth inquiry messages do not necessarily require including an additional data field, or a broadcast channel, the nature of inquiry messages permits such additional data to be appended.   *See* '891 Patent, 8:62-66 ("The Bluetooth inquiry procedure has been proposed specifically to solve the problem of bringing together master and slave: the applicants have recognized that it is possible to piggy-back a broadcast channel on the inquiry messages issued by the master."), 10:1-8 ("The presence of the extra data field means that the guard space conventionally allowed at the end of a Bluetooth inquiry packet is reduced.").   The '891 Patent explains that in the alleged invention, "the inquiry messages issued by the base station have an extra field appended to them, capable of carrying a user-defined payload (CA DATA)."   *Id.*, 9:58-61; Fig. 6.

The only claim discussed in the Complaint—claim 1—reads as follows:

> 1. A communications system comprising at least one first portable device capable of wireless message transmission and at least one second portable device capable of receiving such a message transmission, wherein the at least one first portable device is arranged to broadcast a series of inquiry messages each in the form of a plurality of predetermined data fields arranged according to a first communications protocol, wherein the at least one first portable device *is further arranged to add* to each inquiry message prior to transmission *an additional data field*, and wherein the at least one second portable device is arranged to receive the transmitted inquiry messages and read data from said additional data field.

'891 Patent, cl. 1 (emphasis added).   In other words, claim 1 requires: (1) two generic "portable device[s]," one capable of transmitting, the other receiving; (2) the first portable device can broadcast the admittedly conventional inquiry messages in the form of a plurality of predetermined data fields, (3) adding to each inquiry message a generic "additional data field;"

and (4) the second portable device to be "arranged to" receive the inquiry message and read whatever is in the generic "additional data field."

## IV.    LEGAL STANDARD

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded facts as true and view these in the light most favorable to the plaintiff. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).  The Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## V.    ARGUMENT

### A.    The '891 Patent is Directed to Patent-Ineligible Subject Matter in Violation of § 101

Section 101 lists four broad categories of patent-eligible subject matter but is subject to longstanding judicial exceptions—i.e., that laws of nature, natural phenomena, and abstract ideas are not eligible for patent protection. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).

Here, the '891 Patent is directed to ineligible subject matter because it claims an abstract idea and does not claim an inventive concept that transforms the abstract idea into a patent-eligible application. *Alice* sets forth a two-step inquiry.  "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.*  In making this inquiry, the claims "must be considered as a whole." *Id.* at 2355 n.3 (quoting *Diamond v. Diehr*, 450 U.S. 175, 188 (1981)).  If the claims recite an abstract idea, the second step requires a "search for an 'inventive concept'— an element or combination of elements that is 'sufficient to ensure that the patent in

practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Id.* at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 73 (2016)).  "A claim that recites an abstract idea must include 'additional features' to ensure 'that the claim is more than a drafting effort designed to monopolize the abstract idea.'"  *Id.* at 2357 (quoting *Mayo*, 566 U.S. at 78) (alterations omitted).  The recited "additional features must be more than well-understood, routine, conventional activity."  *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013) (internal quotations omitted).

### 1.    For Purposes of This § 101 Analysis, Claim 1 Is Representative

When the claims are "substantially similar and linked to the same abstract idea," the court may use a representative claim for its two-step *Alice* analysis.  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1368 n.7 (Fed. Cir. 2017) (concluding that claims "should rise or fall together" when they "contain only minor differences in terminology but require performance of the same basic process") (internal quotation omitted).  "The party asserting invalidity may overcome the presumption of independent validity by offering a substantial rationale for treating a claim as representative."  *PPS Data, LLC v. Jack Henry & Assocs.*, No. 2:18-CV-00007-JRG, 2019 U.S. Dist. LEXIS 169218, at *9, 11 (E.D. Tex. Sept. 6, 2019).  "Once the defendant has made a prima facie case the burden shifts to the plaintiff to identify limitations that are present in the asserted claims but that are not represented by the allegedly representative claim."  *Id*. at *13.  Further, "the representativeness inquiry must be 'directly tethered to the claim language.'"  *Id*. at *11 (quoting *Solutran, Inc. v. Elavon, Inc*., 931 F.3d 1161, 1168 (Fed. Cir. 2019)).

In this case, claim 1 of the '891 Patent is representative because it encapsulates the same basic components and process as recited in all other claims.  Like claim 1, the other claims require:

(1) at least a generic portable "device" or a fixed "receiver device," with one device capable of transmitting, the other receiving; (2) that one of the devices can broadcast the admittedly conventional inquiry messages in the form of a plurality of predetermined data fields, (3) that a generic "additional data field" be added to the conventional inquiry message, and (4) that the other device receive the inquiry message and read whatever is in the generic "additional data field."

For example, independent claims 14, 17, and 18 recite the use of generic "portable communications devices" to: (1) "broadcast inquiry messages" having a "plurality of predetermined data fields," (2) add "an additional data field" to the inquiry message prior to transmission, (3) receive these inquiry messages and read the data from this "additional data field." In addition, claim 24 recites "means for receiving messages," a "means for distinguishing . . . at least one of a plurality of inquiry messages," each having "plurality of fields in accordance with a first communications protocol" (e.g., prior art Bluetooth protocols), and "a least one additional data field."

Likewise, the dependent claims are all drawn to the same basic process as claim 1 while reciting conventional wireless communication components and protocol, which do not change the basic process underlying claim 1.  In particular, dependent claim 8 adds only that the first portable device of claim 1 comprises "communications components."  Dependent claim 9 adds only that the second portable device of claim 1 comprises "a receiver capable of receiving a short-range wireless inquiry message," which the specification explains were available and known in the art, and "means for reading data from the additional data field and presenting this data to the user." '891 Patent, 1:17-20 ("Such 'Context-Aware' (CA) mobile telephones are used with low power, *short range* base stations . . . .").  Similarly, claim 30 (dependent from claim 24) recites a "means for generating inquiry messages of the same type that the device is arranged to distinguish."

Claims 10-13 and 31-33 merely duplicate the functionalities between the first and second portable devices.  Claim 33, depending from claim 32, requires "said switching [to] occur[] at pseudo-random intervals."  Claim 2 (depending from claim 1) requires indicating the location of the additional data field at the end of the respective inquiry message.  Claims 15, 19 and 25 (depending from claims 14, 18 and 24, respectively) recite the same additional limitation as claim 2.  Claim 3 (depending from claim 1) requires that the first portable device be arranged to include an indication in the inquiry message that there is an additional data field.  Claims 16, 20 and 26 (depending from claims 14, 18 and 24, respectively) recite this same additional limitation.  As the specification explains, the addition of an extra data field to existing inquiry messages does not change their configuration.  *See id.*, 10:1-7.

Further, claims 4 (depending from claim 1), 21 (depending from claim 18), and 27 (depending from claim 24) each limit the recited "first communications protocol" to Bluetooth messaging, a well-known feature.  *See, e.g.,* '891 Patent, 2:6-13.  Additionally, claims 5 (depending from claim 1), 22 (depending from claim 18), and 28 (depending from claim 24) recite the first portable device "configured to broadcast the inquiry messages on a predetermined clocked succession of frequencies, with clock information for said first portable device being included in data carried by said additional field," which, as the patent concedes is also performed by "conventional Bluetooth systems." *Id.*, 9:1-20.  Again, the specification notes that this feature is incorporated such that the prior art "receivers can ignore it without modification." *Id.*, 9:63-67.

Further still, claim 6 (depending from claim 1) requires a "storage means holding second comparison data and comparator means arranged to identify when there is a match between the first and second comparison data and present the data read from the additional data field, otherwise to not present the data." Claim 7 (depending from claim 6) and claim 29 (depending from claim

24) recite the additional limitation of a "means for generating said second comparison data from user profiling of the user of said second portable device."  Likewise, claim 23 (depending from claim 18) merely recites the additional limitation of "means for generating further includes comparison data in the inquiry messages, the comparison data being for enabling the second portable device to decide whether to read data from the additional data field or not."

As shown, the claims of the '891 Patent are directed to concepts that are substantially similar to and require the performance of the same basic process as that of claim 1 and any differences recited in the other claims are insubstantial—nothing more than conventional and routine limitations.[6]  Accordingly, claim 1 is representative.  *See, e.g., T-Rex Prop. AB v. Regal Ent'mt Grp.*, No. 6:16-cv-927-JDK-KNM, 2019 WL 4727426 at *2 (E.D. Tex. Sep. 27, 2019) (finding claim representative when the other claims "use virtually identical language to claim a method and a system respectively," and the only changes "are the addition of the generic computers and 'means' for executing the [claimed] method")).

2. *Alice* **Step One: The '891 Patent Is Directed to the Abstract Idea of Adding an Additional Data Field to an Otherwise Conventional Message in a Wireless Communication System**

*Alice* step one requires an evaluation of "whether the claims at issue are directed to a patent ineligible concept."  *Alice*, 134 S. Ct. at 2355.  Here, the '891 Patent claims are directed to nothing more than ***adding an additional data field to an otherwise conventional message in a wireless communication system***.  The inventors described their "general invention concept" as "including a broadcast channel [*i.e.*, a data field] as part of the inquiry procedure," and explained that their technique was applicable to a broad array of communication arrangements.  '891 Patent, 4:51-55.

---

[6]  That claim 1 is representative is further supported by the fact that Uniloc's Complaint discusses infringement of the '891 Patent in view of claim 1 only. Dkt. 1 at ¶¶ 12, 17, 21-23.

Recognizing that "it is possible to piggy-back a broadcast channel on the inquiry messages issued by the master," *id.*, 8:62-66, the inventors consistently referred to adding a data field to the conventional inquiry message used in a Bluetooth system as the invention throughout the specification of the '891 Patent. *See, e.g., id.*, Abstract, 2:55-57, 2:65-67, 9:58-61.

Adding a data field to the conventional inquiry message, i.e., the idea of defining a space in a conventional inquiry message for the transmission and reception of some unspecified data, is most certainly abstract.  What's more, the nature of Bluetooth systems already permits such additional data to be appended:  "The presence of the extra data field means that the guard space conventionally allowed at the end of a Bluetooth inquiry packet is reduced." '891 Patent, 10:1-8. According to the '891 Patent, this space is unused because "current frequency synthesisers [sic] are capable of switching at speeds which do not need extension into the extra guard space." *Id.*, 10:5-7.  Although informative, the '891 Patent's discussion on synthesizers is unremarkable because, e.g., the claims are not directed to a new synthesizer that allowed space to go unused in conventional inquiry messages.

Rather than being limited to something new, the claims here are broadly drafted—lending itself to cover the idea of allowing an inquiry message to include some data by adding a "field" to the message (i.e., adding an additional data field to an otherwise conventional message in a wireless communication system).  But "[a]n idea of itself is not patentable." *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (quoting *Rubber-Tip Pencil Co. v. Howard*, 87 U.S. 498, 507 (1974)).  The '891 Patent would preempt the concept of adding any data to Bluetooth's pre-existing inquiry message, regardless of how the "field" for inserting that data is created, how any data is inserted into the field, or the type of data included in the field itself.  These concerns over preemption further demonstrate that the claims of the '891 Patent are directed to an idea in the abstract and, as

such, are ineligible for patent protection.  *See O'Reilly v. Mor*se, 56 U.S. 62, 112-113 (1853) (striking down claim to use of electromagnetism to reproduce characters at a distance regardless of the machines used over concerns that such a claim preempts new discoveries).

Moreover, Uniloc's allegations in its Complaint—*e.g.*, that the '891 Patent describes "problems and shortcomings . . . and claims novel and inventive technological improvements and solutions to such problems and shortcoming" and alleged improvement to "power consumption"— do not redeem the '891 Patent because none of the claims recite any of the purported improvements and solutions, including an improvement to power consumption.  *See* Dkt. 1, ¶ 7; *ChargePoint, Inc. v. SemaConnect, Inc.,* 920 F.3d 759, 766 (Fed. Cir. 2019) ("[W]hen analyzing patent eligibility, reliance . . . must always yield to the claim language . . . .")).  Thus, the '891 Patent is directed to nothing more than the abstract idea of adding an additional data field to an otherwise conventional message in a wireless communication system.

a.    *Similar cases show that the '891 Patent claims an abstract idea*

Courts "have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases."  *Uniloc USA, Inc. v. AVG Techs. USA, Inc.*, No. 2:16-CV-00393-RWS, 2017 U.S. Dist. LEXIS 45125, at *14-15 (E.D. Tex. Mar. 28, 2017) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016)).  In this case, there are several cases that show the '891 Patent is patent-ineligible.

The Federal Circuit's decision in *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) is instructive.  There, two of the patents used "result-based functional language" and required the functional results "converting," "routing," "controlling," "monitoring," and "accumulating records."  *Id.*  The problem was that the claims did not "sufficiently describe how to achieve these results in a non-abstract way."  *Id.*  Specifically, the claim merely recited the manipulation of data and not how that data was manipulated in a non-

abstract way.  *Id.* at 1338.  Like the patent-ineligible *Two-Way Media* claims, the claims here too are patent-ineligible because they merely recite devices capable of transmitting and receiving messages, including the addition of "an additional data field" to an inquiry message and the capability to "read data from said additional data field."  '891 Patent, cl. 1.  The '891 Patent claims here do not specify how this is done.  Nor do they even require any data to be inserted into the data field.

The '891 Patent claims are also similar to the claims discussed in *3G Licensing S.A. v. Blackberry Ltd.*. 302 F. Supp. 3d 640, 646 (D. Del. 2018).  The claims at issue there required "a generating device," "a varying device configured to vary original data," and a "permutating device," which was "configured to perform a permutation of bit position relative to said particular ordered sequence for at least some of the bits in each of said blocks making up said original data." *Id.* at 647.  The court concluded that those claims were "directed to the abstract idea of reordering data and generating additional data."  *Id.* at 651.  The court took issue that the claims did "not say how data is reordered, how to use reordered data, how to generate additional data, how to use additional data, or even that any data is transmitted," and, as such, they were held to be directed to an abstract idea.  *Id.* at 652.

Like the patent-ineligible claims in *3G Licensing*, claim 1 of the '891 Patent generically recites various features (*e.g.*, devices, "inquiry messages," and "a plurality of predetermined data fields") and then simply adds "an additional data field" to those otherwise conventional messages without reciting how to do so or what it may entail.  "Simply 'reciting data manipulation steps' without additional limitations, constitutes, at step one, an abstract idea."  *Id.* (quoting *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017)).  In fact, the claims here are broader and more abstract than those at issue in *3G Licensing* because the claims

here require merely adding a "field" for the data, which the specification explains is done by reallocating unused space in prior art inquiry messages.  *See* '891 Patent, 10:1-7.  Thus, the '891 Patent claims are patent-ineligible.

Yet another Federal Circuit case is apposite here.  In *In re TLI Communications*, the court held that claims reciting the steps of "recording" and "storing" images, followed by "transmitting," "receiving," and "extracting" data related to these images, were directed to an abstract idea of "classifying and storing digital images in an organized manner."  823 F.3d 607, 610 (Fed. Cir. 2016).  There, "concrete, tangible components such as a 'telephone unit' and a 'server'" did not alter the conclusion, as "the specification ma[de] clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea."  *Id.* at 611.  The court further noted that the claims were not drawn to any specific improvement in computer functionality; rather, the court held that they were "directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem by combining the two."  *Id.* at 611.  Specifically, the court concluded "[t]he specification fails to provide any technical details for the tangible components, but instead predominantly describes the system and methods in purely functional terms.  For example, the 'telephone unit' of the claims is described as having 'the standard features of a telephone unit' . . . Likewise, the server is described simply in terms of performing generic computer functions such as storing, receiving, and extracting data."  *Id.* at 612.

The '891 Patent claims likewise are broadly drafted and are not directed to any specific improvement in the conventional wireless message transmission environment or Bluetooth technology.  Neither the claims nor the specification describe how to achieve the purported invention of "piggy-backing" an additional data field on the inquiry messages.  *See* '891 Patent,

8:65-66.  Instead, they merely recite a conventional Bluetooth network arranged to implement the abstract idea—adding an additional data field to an otherwise conventional message in a wireless communication system—and explain that the mechanism to transmit and receive inquiry messages having an additional data field is "entirely compatible with conventional Bluetooth systems." *Id.*, 9:1-3.  Accordingly, *Two-Way Media, 3G Licensing*, and *In re TLI Communications* show the '891 Patent claims are directed to an abstract idea.

      *b.*    <u>The LG Decision is analogous and highly persuasive</u>

The *LG Decision* is compelling.  In that case, the California district court held that the claims of the closely-related '049 Patent, which recited "adding to an inquiry message . . . an additional data field for polling at least one secondary station," to be invalid.  *LG Decision*, 379 F. Supp. 3d at 1000; *id.* at 989 (quoting '049 patent, 7:29-41).

In particular, Judge Koh held that shared aspects of the specifications present in the '049 and '891 Patents—including statements about "piggy-back[ing]" on existing inquiry messages set forth above—did not alleviate the abstractness evident from the claims.  *Id.* at 991-92.  Judge Koh concluded from the '049 Patent that "the process of *'piggy-backing' polling data* onto a conventional inquiry message is therefore a conventional concept because [] the data inquiry message is already comprised of 'a plurality of predetermined data fields'."  *Id.* at 981-92 (emphasis added).  This conclusion follows in this case too with respect to the broader '891 Patent claims because, for the purposes of evaluating this motion to dismiss, there is no relevant difference between the now-invalidated claims of the '049 Patent and the claims of the '891 Patent.

In fact, the difference—*i.e.*, that the claims-at-issue in the *LG Decision* specified that the "additional data field" was "for polling"—shows that the '891 Patent claims involving "additional data field" are broader and even more abstract than the '049 Patent, and the addition of polling data to the claim did not save the '049 Patent claims from abstractness.  *See LG Decision*, 379 F.

Supp. 3d at 992-93 ("Adding an additional data field for polling a secondary station is no different than what is already claimed—a plurality of data fields that comprise the inquiry message," which is "no less abstract.").  It follows then that the broader, but substantially similar, claims of the '891 Patent are also directed to an abstract idea under § 101.

Specifically, an analysis of the relevant claims between the two patents show that the patents cover the same basic concept and the scope of the claims are essentially the same.[7]  A comparison of claim 1 of the '891 Patent and claim 2 of the '049 Patent reveals as much.[8]  Both claims recite the admittedly known use of first and second "device[s]" or "station[s]."  '891 Patent, 12:15-27; '049 Patent, 7:42-49.  Both claims recite the broadcast of "a series of inquiry messages[,] each in the form of a plurality of predetermined data fields arranged according to a first communications protocol."  '891 Patent, 12:19-22; '049 Patent, 7:44-46.  They both also recite the allegedly innovative feature as adding "an additional data field" to the inquiry messages.  '891

---

[7] The similarities between the '891 Patent and the '049 Patent make sense.  The '891 Patent was filed four days after the application for the '049 Patent, *compare* '891 patent, filed Jun. 11, 2001 *with* '049 patent, filed Jun. 7, 2001, they share:  a common inventor, *compare* '891 patent (naming Robert J. Davies and Raul J. Rankin as inventors) *with* '049 Patent (naming Robert J. Davies as the inventor); the same original assignee, *compare* '891 Patent (naming Koninklijke Philips Electronics N.V. as the assignee) *with* '049 Patent (same); and a foreign priority application, *compare* '891 Patent (claiming foreign application priority to GB Patent Appl. No. 0015454) *with* '049 Patent (same), which the '891 Patent incorporated by reference, *see* '891 Patent, 2:13-16.

[8] Judge Koh held claim 2 of the '049 Patent representative of the '049 Patent.  *See LG Decision,* 379 F. Supp. 3d at 989.  The '049 Patent is not part of the pleadings in this case nor is it incorporated by reference into them.  Nevertheless, it is appropriate to consider matters that courts can take judicial notice of when resolving a motion to dismiss.  *See, e.g., Funk*, 631 F.3d at 783; *Norris v. Hearst Trust*, 500 F.3d 454, 461 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").  The text of issued patents— formal documents which issue from the United States Patent and Trademark Office and upon which the public is presumed to rely—are judicially noticeable under Fed. R. Evid. 201.  *See, e.g., Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 664 n.12 (7th Cir. 1996) (taking judicial notice of contents of a patent in trade dress suit); *St. John's Univ. v. Bolton*, 757 F.Supp.2d 144, 154 (E.D.N.Y. 2010); *Hay & Forage Indus. v. New Holland N. Am., Inc.*, 25 F.Supp.2d 1170, 1175 n.2 (D. Kan. 1998).  Therefore, Samsung submits that judicial notice is appropriate here, and Samsung requests that the Court take judicial notice of the text of the '049 Patent.

Patent, 12:22-24; '049 Patent, 7:46-49.   That the claims of the two patents are substantially similar

is further supported by a terminal disclaimer found in the prosecution history of the '049 Patent,[9]

which was filed to overcome an obvious type double-patenting rejection based on the '891

Patent.[10]   While a terminal disclaimer does not conclusively show that the terminally-disclaimed

claims—the '049 Patent claims—are patently indistinct from the '891 Patent claims, "the terminal

disclaimer is still very relevant to that inquiry" and "a strong clue that a patent examiner and, by

concession, the applicant, thought the claims . . . lacked patentable distinction."   *SimpleAir v.*

*Google*, 884 F.3d 1160, 1168 (Fed. Cir. 2018).

    The similarities between the claims are buttressed by the similarities in the descriptions of

the alleged innovations in the '891 and '049 Patents.   Both patents recognized that there was

unused space in Bluetooth inquiry messages provided to allow for a frequency synthesizer to

change frequencies:

| The '891 Patent | The '049 Patent |
| --- | --- |
| "The presence of the extra data field means that the guard space conventionally allowed at the end of a Bluetooth inquiry packet is reduced. However, this space—provided to give a frequency synthesiser time to change to a new hop frequency—will be generally unused otherwise . . . ." 10:1-5. | "The presence of the extra data field **504** means that the guard space conventionally allowed at the end of a Bluetooth inquiry packet is reduced. However, this space is provided to give a frequency synthesiser time to change to a new hop frequency and will be generally unused otherwise . . . ." 5:12-17. |

[9] Samsung requests that the Court take judicial notice under Fed. R. Evid. 201 of the prosecution history of the '049 Patent (Ex. 8) since it is a matter of public record whose contents are not subject to debate.   *Cf. Integrated Tech. Sys., Inc. v. First Internet Bank of Indiana*, No. 216-cv-00417-JRG-RSP, 2017 WL 631195, at *2 (E.D. Tex. Jan. 30, 2017) ("Courts evaluating patent-eligibility at the pleading stage nevertheless consider the asserted patent and relevant prosecution history as matters of public record appropriate for judicial notice.").

[10] During prosecution of the '049 patent, the Examiner concluded that the application claims of the '049 Patent and the issued claims of the '891 patent were "***not patentably distinct from each other***."   File History of U.S. Patent No. 6,993,049 (Ex. 8) at 52 (emphasis added).   In response, the Applicants did not amend any of the claims but instead filed a terminal disclaimer to the '891 Patent "to obviate the double patenting rejection" on February 18, 2005.   *Id.* at 42-46.   The '049 Patent was then allowed.   *Id.* at 29, 49.

In addition, both patents recognized that current synthesizers were "capable of switching at speeds which do not need extension into the extra guard space."  '049 Patent, 5:14-19; '891 Patent, 10:3-7.  Further, both patents explain that the alleged innovation was to define a new "data field" to allow the insertion of additional data into the inquiry message:

| The '891 Patent | The '049 Patent |
| --- | --- |
| "[T]he applicants have recognised that it is possible to piggy-back a broadcast channel on the inquiry messages issued by the master."  8:64-66. | "The applicants have recognised that it is possible to piggy-back a broadcast channel on the inquiry messages issued by the master."  4:15-17. |
| "[T]he applicants propose that the inquiry messages issued by the base station have an extra field appended to them, capable of carrying a user-defined payload (CA DATA)."  9:58-61. | "[T]he applicants propose that the inquiry messages issued by the base station have an extra field appended to them, capable of carrying a HID poll message."  4:59-62. |

In the '049 Patent, the data put into the data field is limited to polling data.  '049 Patent, 7:49-49; claims 1-12.  In contrast, the '891 Patent is not so limited and does not even claim what kind of data goes into the added data field; the patent just describes it as "a user defined payload."  '891 Patent, 9:58-61.

Moreover, Uniloc's own descriptions of these patents further demonstrate their similarities. Uniloc describes the patents in nearly the same manner in its complaints:

> The '049 ['891] Patent describes in detail and claims in various ways inventions in systems and devices developed by [*employees of*] Koninklijke Philips Electronics N.V. [*around 2000*] for improved communication of data there between
>
> * * * * *
>
> The '049 ['891] Patent describes problems and shortcomings in the then-existing field of communications between [*portable*] devices and describes and claims novel and inventive technological improvements and solutions to such problems and shortcomings.
>
> The technological improvements and solutions described and claimed in the '049 ['891] Patent were not conventional or generic at the time of their

respective inventions but involved novel and non-obvious approaches to the problems and shortcomings prevalent in the art at the time.[11]

*Compare Samsung I*, Dkt. 1 (Ex. 6), ¶¶ 11-12 *with LG Decision*, Dkt. 1 (Ex. 7), ¶¶ 10-11 *and* Dkt. 1, ¶¶ 6-7.  The Complaint cites to the specification of the '891 Patent for alleged "problems and shortcomings," including power consumption, (Dkt. 1, ¶ 7 (citing '891 Patent, 2:13-33)), and then cites to ten of the patent's fourteen columns as allegedly describing technological improvements and solutions (*id.* at ¶ 8 (citing '891 Patent, 4:46-14:56)).  Likewise, the accused products in each case are also the same: "electronic devices that utilize Bluetooth Low Energy version 4.0 and above."  Dkt. 1, ¶ 11; *Samsung I*, Dkt. 1, ¶ 15; LG Case, Dkt 1, ¶ 14.

Like the '049 Patent, the '891 Patent also "describes the purported invention in broad, generic, functional terms but fails to identify how those ends are achieved . . . and is not directed to a specific improvement to conventional or generic Bluetooth technology."  *LG Case*, 379 F. Supp. 3d at 991.  Accordingly, for the same reasons the California district court held '049 Patent is directed to an abstract idea, the '891 Patent too is also directed an abstract idea and is thus invalid.

3.    ***Alice* Step Two: Representative Claim 1 Does Not Contain an Inventive Concept to Transform its Abstract Idea into Patent-Eligible Subject Matter**

*Alice* step two does not save the '891 Patent.  "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018).  Here, no inventive concept exists that would transform the '891 Patent's abstract idea of ***adding an additional data field to an otherwise***

---

[11] The italicized language in this quote reflects additional language found in this case's Complaint.

***conventional message in a wireless communication system*** into patent-eligible subject matter.

For example, the '891 Patent specification describes the claimed portable devices used in wireless communication systems as generic, conventional mobile devices.  The '891 Patent states that "'Context-Aware' (CA) mobile telephones are used with low power, short range base stations in places like shopping malls to provide location-specific information." '891 Patent, 1:17-20.  The '891 Patent lists several examples of prior art devices that broadcast data to other nearby devices. *Id.*, 1:42-60.  The '891 Patent also discloses that technologies like Bluetooth were known. *Id.*, 2:6-13.  The specification discloses no technology or way to perform the claimed addition of a "data field," and instead presumably claims all ways of adding a data field to an existing inquiry message.  Thus, the claims of the '891 Patent use only conventional components and technique while adding "to each inquiry message prior to transmission an additional data field," '891 Patent, cl. 1; *id.*, 9:58-61 ("the applicants propose that the inquiry message . . . have an extra field appended to them"), and thereafter reading that field, *id.*, 8:66-67 ("Only CA terminals need read the broadcast channel . . . .").  This is nothing more than the abstract idea itself, which cannot supply the inventive concept.  *See BSG Tech,* 899 F.3d at 1287 ("[A] process of taking two data sets and combining them into a single data sets" without input from a physical device recites a patent ineligible abstract process.").

While Uniloc may argue that the invention is confined to a particular technological environment, the patent claims are not restricted in that way.  *See* '891 patent, 4:51-55 ("As will be recognized, the general invention concept . . . is not restricted to Bluetooth devices, and is applicable to other communications arrangements . . . .").  And, even if the claims were limited to a specific Bluetooth environment, this is simply a conventional environment for implementing the abstract idea and does not provide an inventive concept.  *See Cisco Sys. v. Uniloc USA, Inc.,* 386

F. Supp. 3d. 1185, 1201-02 (N.D. Cal. 2019) (finding no inventive concept when the claim and specification "as a whole simply use existing Bluetooth technology and existing hardware as the generic environment for implementing the abstract idea"); *LG Decision*, 379 F. Supp. 3d at 974 (same); *Content Extraction*, 776 F.3d at 1348 (finding no inventive concept when the claims used "generic" components "to perform well-understood, routine, and conventional activities commonly used in industry," and attempts to limit the abstract idea "to a particular technological environment" are not sufficient).

Simply put and as Judge Koh concluded, "[a]dding an additional data field . . . is no different than what is already claimed: a plurality of data fields that comprise the inquiry message." *LG Decision*, 379 F. Supp. 3d at 998.  It is merely adding "a more specific form of a generic implementation of the inquiry message," *id.,* or, in other words, a narrower application of the abstract idea that is nevertheless an abstract idea.  *BSG Tech.,* 899 F.3d at 1287 ("a claim is not patent eligible merely because it applies an abstract idea in a narrow way."); *Uniloc USA, Inc. v. Med. Info. Tech., Inc.*, No. 6:16-cv-463-RWS, 2017 U.S. Dist. LEXIS 192677, at *21-22 (E.D. Tex. Mar. 30, 2017), *aff'd sub nom Uniloc USA, Inc. v. Picis, Inc.*, 753 F. App'x 903 (Fed. Cir. 2019) ("Moreover, creating a new data field to accommodate a new data point is inherent to, and therefore does not meaningfully limit, using a hierarchical data format.  Similarly, specifying values to populate those fields does not meaningfully limit the idea of using a hierarchical data format.  Even considering the ordered combination of steps, claim 1 does not recite a particular way of structuring the hierarchy because it recites the basic steps of making a hierarchy at all.").

Moreover, even when viewed as an "ordered combination," the limitations of the claim recite nothing more than a conventional arrangement and therefore "add nothing that is not already present when the [limitations] are considered separately."  *Alice*, 134 S. Ct. at 2359 (quoting *Mayo*,

132 S. Ct. at 1298).  As the specification admits, the "the mechanism is *entirely compatible* with conventional (non-CA) Bluetooth systems."  '891 Patent, 9:1-3 (emphasis added).  And to the extent that the claimed invention is purported to provide "improved communication of data therebetween," *see* Dkt. 1, ¶ 6, or minimized power consumption, *see* Dkt. 1, ¶ 7; *see also LG Decision*, 379 F. Supp. 3d at 996-97, these "unclaimed advantages cannot, in themselves, constitute an inventive concept because any inventive concept must be found in the claims." *Uniloc USA, Inc.*, 2017 U.S. Dist. LEXIS 45125, at \*23-24.  Neither claim 1 nor the other '891 Patent claims recite any such limitations.  Thus, none of the claim elements provide any inventive concept.  *See, e.g., Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) ("enumerating *types* of information and information sources available" and "selecting information, by content or source" do not supply an inventive concept) (emphasis added)).  Accordingly, the '891 Patent is directed to patent-ineligible subject matter and is thus invalid.

## VI.    PRECLUSION DOCTRINES WARRANT DISMISSAL OF THE PRESENT SUIT

The prior *LG Decision* invalidated the '049 Patent.  Given the similarities between the '891 Patent asserted here and the invalidated '049 Patent, Uniloc should be barred from pursuing this case based on the preclusion doctrine of collateral estoppel.  In addition, Uniloc should have asserted the '891 Patent along with the closely-related '049 Patent in the earlier *Samsung I* Case because the rule against claim-splitting requires claims arising out of a single wrong be presented in one action.  Its failure to do so warrants dismissal of this duplicative action.

### A.    Uniloc Is Collaterally Estopped from Asserting the '891 Patent

Collateral estoppel, or issue preclusion, "prohibits a party from seeking another determination of the litigated issue in the subsequent action."  *Soverain Software v. Victoria's Secret Direct Brand Mgmt.,* 778 F.3d 1311, 1315 (Fed. Cir. 2015) (quoting *State Farm Mut. Auto. Ins. Co. v. LogistiCare Sols., LLC,* 751 F.3d 684, 689 (5th Cir. 2014).  In the Fifth Circuit, collateral

estoppel bars re-litigation of an issue if: (1) the issue under consideration is a subsequent action must be identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine." *Id.* (stating that Federal Circuit law on collateral estoppel "is similar"). "[Federal Circuit] review of a collateral estoppel determination is generally guided by regional circuit precedent, but [it] appl[ies] [its] own precedent to those aspects of such a determination that involve substantive issues of patent law," including whether a particular claim in a patent case is the same as or separate from another claim has special application to patent cases. *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1343 (Fed. Cir. 2013) (citing *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1341 n.1 (Fed. Cir. 2012)). The Federal Circuit law does not limit collateral estoppel to patent claims that are identical. "Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply." *Id.* at 1342 (emphasis in original). Importantly, "[i]f the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies." *Id.*

While issue preclusion is generally an affirmative defense to be pleaded in a defendant's answer (*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005)) there are times when it may be raised on a Rule 12(b)(6) motion. The Fifth Circuit has found that issue preclusion may be properly raised on a motion to dismiss when, as in this case, "the facts are admitted or not controverted or are conclusively established." *Clifton v. Warnaco, Inc.*, 53 F.3d 1280, 1995 WL 295863, at *6 n. 13 (5th Cir. 1995) (internal citations omitted). "When all relevant facts are shown by the court's own records, of which the court takes notice, the defense [of res judicata] may be upheld on a Rule 12(b)(6) motion without requiring an answer." *Id.*

### 1.     There Is Identity of Issues Between This Case and the *LG Decision*

This case (*Samsung II*) and the *LG Case* share substantially the same essential transactional facts.

**First**, Uniloc is accusing "electronic devices that utilize Bluetooth Low Energy version 4.0 and above" in the two cases.  *See* Dkt. 1, ¶ 11; LG Case, Dkt 1, ¶ 14.  Thus, there is substantial overlap between the transactional facts of the suits as they relate to the accused products and the issues of infringement.

**Second**, the asserted patents in the two cases are substantially similar.  *See supra* § V.A.3. As discussed above, the scope of the '049 and '891 Patents—as recited in the claims, as described in the relevant portions of the respective patent specifications, and even as alleged in Uniloc's respective complaints—are essentially the same.  That the patents use slightly different language to describe substantially the same invention does not preclude the application of collateral estoppel.  *See Ohio Willow Wood*, 735 F.3d at 1343 ("[T]he mere use of different words in these portions of the claims does not create a new issue of invalidity.").  This is further supported by the terminal disclaimer found in the prosecution history of the '049 Patent, which was filed to overcome an obvious type double-patenting rejection based on the '891 Patent.  (Ex. 7).  While a terminal disclaimer does not conclusively show that the terminally-disclaimed claims—the '049 Patent claims—are patently indistinct from the '891 Patent claims, "the terminal disclaimer is still very relevant to that inquiry" and "a strong clue that a patent examiner and, by concession, the applicant, thought the claims . . . lacked patentable distinction."  *SimpleAir,* 884 F.3d at 1168 ("[W]e conclude that the claims which are patentably indistinct are essentially the same.").  Thus, there is substantial overlap between the transactional facts of the suits as they relate to substantially similar patent claims.

**Third**, the question of the '891 Patent's patent-eligibility relies upon the same conclusions

rendered by the California district court in the *LG Decision*. *See supra* § III.A (comparing the Complaint in the LG Case and the Complaint here); § V.A.3 (showing similarities in relevant aspects of the specifications for '049 patent and '891 patent). *See supra* § III.A (comparing the Complaint in the LG Case and the Complaint here); § V.A.3 (showing similarities in relevant aspects of the specifications for '049 Patent and '891 Patent).

That this case and the *LG Case* involves different patents is of no moment because, as discussed, collateral estoppel bars re-litigating the same issues of validity when "the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies." *Ohio Willow* Wood, 735 F.3d at 1342 (considering a prior judgment of invalidity based on obviousness), and when "the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies." *Id.* In the end, the critical issue here is precisely the same issue already decided in the *LG Decision*—whether adding an additional data field to an inquiry message is an abstract idea. And, the only difference between the claims of the '049 and '891 Patents—the requirement found only in the '049 Patent claims that the additional data field be used for polling—was found to be insufficient to render the claims patent eligible. *LG Decision*, 379 F. Supp. 3d at 992-93 ("Adding an additional data field for polling a secondary station is no different than what is already claimed—a plurality of data fields that comprise the inquiry message," which is "no less abstract."); *cf. Personalized Media Comm. v. Apple, Inc.*, No. 2:15-cv-1366-JRG-RSP, 2016 WL 5719701 (E.D. Tex. Sept. 13, 2016) (declining to rule on a motion to dismiss when the unadjudicated claims included additional limitations that the adjudicated claims found invalid under § 101 do not). Thus, the extent and materiality of the overlap between this case and the LG Case shows identity between the two cases.

## 2.      The Remaining Collateral Estoppel Elements Are Satisfied

There is no dispute that Uniloc fully litigated the patent-ineligibility issue of the '049 Patent

and that the patent-eligibility issue was necessarily decided to support the judgment in the *LG*

*Decision*. *See* 379 F. Supp. 3d at 982.  Given the fact that the '891 Patent is actually broader in

key respects than the already invalidated '049 Patent, the rule that "where a patent has been

declared invalid in a proceeding in which the patentee has had a full and fair chance to litigate the

validity of this patent, the patentee is collaterally estopped from relitigating the validity of the

patent" is applicable here.  *See Miss. Chem. Corp. v. Swift Agric. Chems. Corp.,* 717 F.2d 1374,

1376 (Fed. Cir. 1983) (internal quotations marks and citation omitted); *see also Ohio Willow*

*Wood*, 735 F.3d at 1342 (applying collateral estoppel when plaintiff had previously litigated issue

of invalidity regarding claims of patent related to patent-in-suit).  Thus, collateral estoppel should

bar re-litigation the patent-ineligibity issues adjudicated in the *LG Decision*, and accordingly, this

Court should grant this Motion based on this separate and independent basis.

### B.      The Rule Against Claim-Splitting Precludes This Case

Uniloc should have asserted the '891 Patent earlier when it instituted *Samsung I*.  "Claim-

splitting occurs when a single 'cause of action' is split by advancing one part in an initial suit and

another part in a later suit."  *Fed. Deposit Insur. Corp. v. Nelson,* 19 F.3d 15, 15 n.5 (5th Cir.

1994). The Fifth Circuit has adopted the rule against claim-splitting, and:

> prohibits a plaintiff from prosecuting its case piecemeal and requires that all
> claims arising out of single wrong be presented in one action.  In a claim
> splitting case, the second suit will be barred if the claim involves the same
> parties and arises out of the same transaction or series of transaction as the
> first claim.

*Ameritox, Ltd. v. Aegis Scis. Corp.*, No. 3:08-cv-1168, 2009 U.S. Dist. LEXIS 13305, at

*16 (N.D. Tex. Feb. 9, 2009) (citing *Super Van Inc. v. City of San Antonio*, 92 F.3d 366 (5th Cir.

1996).  The principles of claim-splitting are similar to claim preclusion but do not require a prior

judgment.  *Chrimar Sys. Inc. v. Alcatel-Lucent, Inc.*, No. 6:15-cv-163-JRG-JDL, 2015 WL 12941897, at *3 (E.D. Tex. May 19, 2015) (citations omitted).  To evaluate whether the same cause of action is involved between two successively filed cases, courts have adopted the "transaction test," which focuses on whether the two cases "are based on the same nucleus of operative facts."  *Houston Prof'l Towing Assoc. v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016).  It is "the nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted that defines the claim."  *Id.* (citations omitted); *Nelson*, 19 F.3d at 15 n.5 (holding that Fifth Circuit applies the "same transaction" test to determine whether a single claim has been split); *Verde v. Stoneridge, Inc.,* 137 F. Supp. 3d 963, 972 (E.D. Tex. 2015) (applying the "same transaction" test); *Ameritox*, 2009 U.S. Dist. LEXIS 13305, at *12-16 (applying same and dismissing suit under rule against claim-splitting).  Finally, in the context of patent infringement, the bar against claim-splitting requires the accused products in the two suits to be "essentially the same."  *Acumed LLC v. Stryker Corp.,* 525 F.3d 1319, 1324 (Fed. Cir. 2008).  "Accused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent. *Id.*at 1354.

In this case, tere is no dispute that the parties in *Samsung II* are the same as the parties in *Samsung I,* filed earlier in this Court.

There is also no dispute that the two cases are based on the same nucleus of operative facts. Indeed, just months after agreeing to move this Court for a stay of *Samsung I* in view of the *LG Decision*, Uniloc filed this case, asserting a near-identical patent and accusing the same Samsung products of infringement.

Because this case involves the same parties, a substantially similar patent, and the same accused products as in *Samsung I,* the rule against claim-splitting applies to bar this action.  *Senju*

*Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 1349 (Fed. Cir. 2014) (considering "overlap of the product or process accused in the instant action with the product or process accused in the prior action"); *Nystrom v. Trex Co., Inc.* 580 F.3d 1281, 1286 (Fed. Cir. 2009) (barring new infringement theory in second lawsuit because accused products in both suits are "materially identical.").

## VII.   CONCLUSION

For the foregoing reasons, Samsung requests that the Court dismiss Uniloc's Complaint because (1) the asserted patent claims are directed to patent-ineligible subject matter in violation of § 101, (2) collateral estoppel bars Uniloc's assertion of these patent claims when another district court has issued a judgment of invalidity regarding a closely related patent, and (3) the doctrine against claim-splitting prevents Uniloc from bringing this suit against Samsung when it sued Samsung fifteen months earlier in *Samsung I*, asserting nearly identical patents and accusing the same parties, same functionality, and the same accused products.

Dated: October 22, 2019

By: */s/ Vivian S. Kuo*
Richard A. Edlin
GREENBERG TRAURIG, LLP
MetLife Building, 200 Park Avenue
New York, NY 10002
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: edlinr@gtlaw.com

Vivian S. Kuo
GREENBERG TRAURIG, LLP
2101 L Street, NW
Washington, DC 20037
Telephone: (202) 331-3100
Facsimile: (202) 331-3101
Email: kuov@gtlaw.com

Melissa R. Smith
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

***Attorneys for Defendants Samsung
Electronics Co., Ltd., and Samsung
Electronics America, Inc.***

## **<u>CERTIFICATE OF CONFERENCE</u>**

On October 22, 2019, Richard Edlin and Vivian Kuo, counsel for Samsung, conferred with Pual Hayes and Kevin Gannon, counsel for Uniloc, as required by Local Rule 7(h).  Counsel for Uniloc confirmed that Uniloc opposes this motion. Discussions conclusively ended at an impasse, leaving an open issue for the Court to resolve.

*/s/ Vivian S. Kuo*
Vivian S. Kuo

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 22nd day of October, 2019, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).

*/s/ Vivian S. Kuo*
Vivian S. Kuo

## CERTIFICATE OF COMPLIANCE WITH THE COURT'S
## <u>35 U.S.C. § 101 MOTION PRACTICE ORDER</u>

_____   The parties **agree** that prior claim construction is not needed to inform the Court's analysis as to patentability.

___x___   The parties **disagree** on whether prior claim construction is not needed to inform the Court's analysis as to patentability.

*/s/ Richard A. Edlin*
_____
Richard A. Edlin
Lead Counsel for Movant
